Scott v. Davis.

4-8627                                    214 S. W. 2d 504

Opinion delivered November 1, 1948.

Rehearing denied November 29, 1948.

*William S. Agent* and *Hugh M. Bland,* for appellant.

*Franklin Wilder* and *Edgar Bethell,* for appellee.

Robins, J. Appellant, Leslie Scott, brought this suit to recover balance alleged to be due on a note for $3,000, executed by appellees, Eugene Davis and Ernestine Davis, his wife, to appellant, Thomas Scott, Jr., transferred to the first named appellant, and also to foreclose a mortgage on a small restaurant building and fixtures in Fort Smith. The defense of appellees was that the note and mortgage had been obtained by appellant, Thomas Scott, Jr., through fraud and that appellant, Leslie Scott, had knowledge of such fraud when he obtained the note and mortgage.

The lower court upheld the contentions of appellees and rendered a decree denying recovery on the note, cancelling it and the mortgage securing same and granting judgment in favor of appellees for $50, which represented an overpayment on the amount which the court found was actually due. This appeal ensued.

The business property involved was owned up to February 20, 1947, by A. J. Pratt. A few days before that time Thomas Scott, Sr., father of appellants, Leslie Scott and Thomas Scott, Jr., had a conversation with Mr. Pratt, in which the latter expressed a willingness to sell the building and fixtures for $4,000. Thomas Scott, Sr., told Pratt that he thought he had a buyer for the property, and a short time later Thomas Scott, Sr., and appellant, Thomas Scott, Jr., went to see Pratt and Pratt repeated the offer to them. Said appellant told Pratt that he had a partner, appellee Davis, and that he and his partner would buy the place. Later in the day said appellee went in the place with appellant, Thomas Scott, Jr., to look it over, but the price was not discussed

with Pratt. Appellant, Thomas Scott, Jr., thereupon told Pratt that they would take the place and told appellee Davis to give Pratt a check for $3,000 and that he would pay Pratt $3,000 on the following day. Pratt had been cautioned by Scott not to tell Davis the price at which he was selling the place.

Appellee Davis gave Pratt his check for $3,000 and thereafter appellant, Thomas Scott, Jr., in the absence of appellee Davis, gave Pratt $1,000 in money. The property was then conveyed to appellee, Eugene Davis, and appellant, Thomas Scott, Jr.

According to Davis' testimony, appellant, Thomas Scott, Jr., approached him in regard to the purchase of the property and suggested that they buy and operate the business as partners, and told him it could be bought for $6,000; and said appellee never knew, until a short time before the institution of the suit, that the price was, in reality, $4,000 instead of $6,000.

Thomas Scott, Sr., who was the father of both of the appellants, testified that, under the arrangement with Pratt, he was to get all over $4,000 that the property would bring, and that appellant, Thomas Scott, Jr., paid him $2,000 in one hundred dollar bills, which was in the nature of a commission.

It was not denied, however, that Pratt had been warned not to let appellee Davis know that he was actually receiving only $4,000 for the property.

The note and mortgage sued on were given for the purchase money of the one-half interest in the business owned by Thomas Scott, Jr., when it was bought by appellee, Eugene Davis. According to Davis' testimony, after they had operated the business about a month, appellant, Thomas Scott, Jr., proposed that he would sell to appellee Davis his one-half interest in the business for what he (Scott) had paid for it, or the sum of $3,000, and that, in acceptance of this proposition, and believing the representations as to the original cost, he had executed the note and mortgage sued on. Payments amount-

ing to $1,050 were made on this note by said appellee before the suit was instituted.

The misrepresentations as to the price paid Pratt for the property were the basis of the fraud pleaded as a defense by appellees.

For reversal appellants contend:

(1) That the evidence fails to show that the execution of the note and mortgage was obtained by fraud.

(2) That there was no proof that appellant, Leslie Scott, was other than an innocent holder for value of the note and mortgage.

## I.

It cannot be well disputed that appellee, Eugene Davis, was deceived in regard to the amount for which the property was bought from Pratt. Pratt and his wife both testified that the real purchase price of the property was $4,000 and that they were asked not to let appellee, Eugene Davis, know this fact. It is conceded that appellee Davis was led to believe that $6,000 was the price, and that he was paying only half thereof. While it is true that there was testimony to the effect that the younger Scott paid his father a $2,000 commission in connection with the sale, neither Pratt nor his wife knew anything about such a commission and they thought the sale was being made for $4,000 directly to the parties named in the deed, and $3,000 was being paid by appellee, Eugene Davis, and $1,000 by appellant, Thomas Scott, Jr. If the transaction was fair as between the Scotts and Davis there could have been no reason for the warning, which they admitted giving Mr. Pratt, not to disclose the true purchase price to Davis.

The business was operated for only thirty days, when, according to appellee, Eugene Davis, appellant, Thomas Scott, Jr., proposed to Davis that he would sell him his one-half interest for "exactly what he had paid Mr. Pratt", and appellee Davis, still believing that appellant, Thomas Scott, Jr., had actually paid $3,000 for his half interest, accepted the proposal and gave his note and mortgage for that amount.

The evidence clearly showed that the note and mortgage sued on were obtained from appellee Davis by fraud and deceit, and that, as between the makers and the payee, they were void on this account.

## II.

Under the Negotiable Instrument Law (Pope's Digest, § 10217) every holder of a negotiable instrument is deemed *prima facie* a holder in due course; but when it is shown that the title of any person who has negotiated such instrument is defective the burden is on the holder to prove that he or some person under whom he claims acquired title as a holder in due course. In 8 Am. Jur., § 1024, p. 610, it is said: "Apart from a few cases, the authorities are unanimous, that fraud in the inception of a negotiable instrument casts upon one who claims to be a *bona fide* holder, or holder thereof in due course, the burden of proving his character as such. This rule is supported by a multitude of authorities decided prior to the Uniform Act . . . " Such was the holding in a comparatively recent case decided by this court. See *McCollum* v. *Graber*, 207 Ark. 1053, 184 S. W. 2d 264.

While there was no direct proof that appellant, Leslie Scott, had actual notice of the fraud that had been perpetrated on appellee Davis, the testimony showed that the two appellants had had many business transactions with each other and lived a comparatively short distance away from each other. Appellant, Leslie Scott, attempted to explain his ownership of the note and mortgage sued on by testifying that he bought them from his brother in a transaction wherein he was collecting from the payee of the note an indebtedness of $1,000, and he exhibited a canceled check showing he had paid his brother a balance of $2,000 cash for the $3,000 note. There was no definite explanation as to the subject matter of the $1,000 indebtedness, nor was any written evidence thereof produced in court. It did not appear that appellant, Leslie Scott, made any investigation of the transaction in which the note and mortgage were executed. In 8 Am. Jur., § 1122, p. 669, it is said: "Actual notice of bad faith may be shown by circumstantial

as well as by direct evidence. Negligence, knowledge of suspicious circumstances, or failure to inquire into the consideration, on the part of the purchaser of an instrument the title to which is defective, although not as a matter of law sufficient to establish bad faith, may be sufficient evidence of bad faith to take that question to the jury, especially where the burden is upon the holder to establish the innocent character of his purchase.''

The question as to whether or not appellant, Leslie Scott, established that he was an innocent purchaser for value of the note and mortgage sued on was one of fact. The court below had all the witnesses before it and had an opportunity, not available to us, to observe their demeanor on the witness stand and thus to appraise their testimony.

A careful review of the testimony fails to convince us that the lower court's finding that appellant, Leslie Scott, did not show that he was such holder of the note and mortgage sued on as would authorize him to recover, after fraud in the inception of the contract had been proved, is against the weight of the testimony.

The decree of the lower court is affirmed.

Mr. Justice HOLT did not participate in the consideration or determination of this case.